IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STANLEY WEISS, derivatively on Behalf of e-Scrub Systems, Inc.<br><br>Plaintiff,<br><br>-vs-<br><br>e-SCRUB SYSTEMS, INC., RALPH GENUARIO, MAIJA HARKONEN, JOHN PACKARD and ELIZABETH RICHARDSON,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>: C.A. No.<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff, Stanley Weiss ("Weiss"), suing derivatively on behalf of Defendant e-Scrub Systems, Inc. ("e-Scrub"), respectfully avers as follows:

## THE PARTIES

1. Weiss is a New Jersey citizen, residing at 278 Underhill Road, South Orange, New Jersey 07079 (phone No. 973-762-2026).

    a. He has a final Judgment for $100,150.00 against e-Scrub and Defendant Ralph Genuario ("Genuario").

2. e-Scrub is a Delaware Corporation, formerly in the business of developing and marketing anti-pollution technology, whose last known address is believed to be 2207 Concord Park, #703 Wilmington, Delaware 19803-2908.

    a. Its registered agent was The Company Corporate, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

3. Genuario (the founder of e-Scrub and its longtime Director, Chief Executive Officer and technology expert) resides at 511 Cameron Station Boulevard, Alexandria, Virginia 22314.

4. Defendant Maija Harkonen ("Harkonen"), whose last known address was 107 S. West Street, #502, Alexandria, Virginia 22304 (but may now be in Finland), served as Genuario's assistant and a longtime e-Scrub Director, President and Secretary.

5. Defendant John Packard ("Packard") was an e-Scrub Director from 2002 until January 2009 and its principal financier; and upon information and belief, he resides at 620 Sand Hill Road, Apt. #315, Palo Alto, California 94304.

   a. Packard is a well known corporate executive and philanthropist who also has served on the Board of Governors of the Robert Packard Center for ALS Research at John Hopkins University and on Stanford University's Board of Trustees as Chairman of its Finance Committee.

6. Defendant Elizabeth Richardson ("Richardson") was a longtime e-Scrub Director whose present address is believed to be 9200 Overlea Drive, Rockville, Maryland 20850-3412.

   a. Richardson has on occasion raised funds for e-Scrub by the sale of securities and has been an investor in another company controlled by Genuario.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship between Weiss and all Defendants and of the fact that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. The Court has personal jurisdiction over e-Scrub because it is a Delaware Corporation and over the individual Defendants pursuant to 10 Del. C. § 3114 because they are

being sued for breach of their directorial duties to e-Scrub; and venue is proper under 28 U.S.C. § 1391(a)(2) and (3).

## THE RELEVANT FACTS

9. In November of 2007, Genuario, acting on behalf of e-Scrub retained the Swedish law firm of Andersson Gustafsson Advokatbyra KB ("Andersson") to commence an arbitration proceeding in Stockholm, Sweden against A.P. Moller-Maersk ("Maersk") concerning certain contract issues and the ownership of processes developed to adapt e-Scrub's anti-pollution technologies to the pollution created by large ships.

   a. Andersson was retained in a phone conference in which Genuario told it that he was calling at the suggestion of Packard whom he said was a director on the Boards of e-Scrub and John Hopkins University; and Andersson, impressed by Packard's role, agreed to work on a credit basis charging its normal rates.

   b. In December of 2007, Maersk filed an injunction action against e-Scrub in the United States District Court for the Eastern District of Virginia, Alexandria Division ("the Maersk suit") seeking to enjoin certain activities by e-Scrub pending the outcome of the Stockholm arbitration.

10. On or about December 19, 2007, Andersson, acting on behalf of e-Scrub (and with its approval), retained Weiss (who is an attorney) to assist it in responding to Maersk's emergent motion for a temporary restraining order.

11. Weiss performed the requested services and on February 4, 2008 submitted a detailed bill to e-Scrub for $20,000.00 which was approved by Harkonen.

 a. Thereafter, Genuario overruled the approval and sent Weiss a number of letters asserting various frivolous claims and demanding payments in various escalating amounts.

 b. On July 13, 2009, e-Scrub filed a suit in New Jersey against Weiss, seeking damages of $1 million and to disbar Weiss pending a competency evaluation.

 c. Weiss filed a counterclaim against e-Scrub and a third party complaint against Genuario.

12.   On February 5, 2010, the Superior Court of New Jersey, Law Division, entered a final judgment against e-Scrub and Genuario in favor of Weiss in the amount of $100,150.00, specifically finding that the actions of e-Scrub and Genuario "were malicious and done with an evil purpose" and imposing a penalty against them "for their malicious abuse of the legal process by seeking to use same to extort monies from Stanley Weiss."

 a. Weiss subsequently learned that Genuario and/or e-Scrub and other companies under Genuario's control were involved in so many litigations and/or threatened litigations against persons providing services or selling merchandise as well as against underwriters, and the U.S. Government that such behavior seemed to be Genuario's routine method of operations.

 b. After Weiss obtained the $100,150.00 judgment, he hired Virginia counsel to enforce the judgment in Virginia; and supplementary proceedings were started in the Circuit Court for the City of Alexandria.

 c. On June 27, 2012, an Order was entered in that proceeding holding Genuario in contempt of Court and, inter alia, imposing a fine of $10,000.00 on e-Scrub to cover Weiss' costs in the proceeding. The Court's factual findings stated that

   Genuario's "behavior throughout this process has been contentious and designed to obfuscate Weiss' counsel's efforts to obtain information related to the assets of e-Scrub" and that his "refusal to cooperate in these proceedings, obey Court Orders and his intentional obfuscation of facts at every turn merit a finding of contempt."

  d. Pursuant to another Order entered by the same Court, Genuario, in his capacity as Chief Executive Officer of e-Scrub assigned to Weiss all of e-Scrub's intellectual property and certain inventory with instructions to Weiss as to a disposition process and the handling of proceeds obtained.

  e. Thus far nothing has been received despite extensive efforts, which are continuing.

  13. The Virginia lawyer pursuing Weiss' collection efforts was also retained by Andersson to file suit in Virginia against e-Scrub, Genuario, Packard and Harkonen. Weiss served as co-counsel in that suit. Andersson obtained a judgment against e-Scrub in the amount of $178,000.00 (plus interest and costs); but the suit against the individual Defendants was dismissed after Packard prevailed on his summary judgment motion that the forum's two year statute of limitations barred the action.

  14. Early in that suit (in July of 2010), Packard filed a declaration which stated:

From several years before 2007 through my resignation from e-Scrub board of directors in 2009, I participated in e-Scrub board meetings by telephone from either my business office in Menlo Park, California or from San Francisco, California or from my home in Palo Alto, California, and I had no contact with the Commonwealth of Virginia in connection with e-Scrub during that time.

15. Weiss first learned that the above quoted statement was false in April of 2011 when in discovery proceedings Packard produced documents and thereafter testified in a deposition conducted by Weiss.

   a. In the course of those proceedings, Weiss also learned for the first time that e-Scrub's Board of Directors had probably not created and/or implemented any reliable, sustained information reporting system to provide the Board with the information needed to oversee the management of the company – e.g., the more than 200 pages of documents produced did not contain any audited or unaudited income, balance sheet, or cash flow statements (which had been specifically requested for the period 2006-2009) or any evidence of any committee formed to assist in oversight.

   b. It was therefore impossible for Weiss to assert any proper derivative claim prior to April of 2011.

16. The documents produced indicated the following:

   a. On fourteen separate occasions, Packard purchased securities of e-Scrub and one of its subsidiaries totaling over $400,000.00 in cash payments with numerous communications to and from Virginia with Harkonen and Genuario with respect to the purchases, arranging for the payments and delivery of the securities.

   b. On November 6, 2007 – before either Andersson or Weiss were retained – Packard received a letter from Harkonen advising that e-Scrub was experiencing "considerable cash flow problems" and that it had received a bill of $23,832.00 from an American law firm whose member Martin Savitzky, was doing

    negotiations and patent work in connection with the Maersk relationship; and the letter requested the purchase of $25,000.00 in securities.

  c. On November 7, 2007, Packard wired e-Scrub $25,000.00; he wired e-Scrub another $25,000.00 on January 8, 2008; he sent $15,000.00 to e-Scrub in February, 2008 to pay e-Scrub's share of the arbitrator's fees in the Stockholm arbitration; and he wired another $11,600.00 to e-Scrub on July 29, 2008 to contribute to the payment of additional arbitrator fees in the Stockholm arbitration.

17.    Packard testified to the following in his deposition:

  a. e-Scrub is bankrupt.

  b. In the November 6, 2007 time frame, e-Scrub was "behind the eight ball for having any money for that whole period of time," and "that it was running out of money."

  c. He didn't take any steps to investigate the nature of e-Scrub's cash flow problems. He didn't know the source of e-Scrub's cash flow problems and doubts it was able to keep any of its revenues and doesn't know whether they had any cash revenues or liquid securities; and he never saw any audited financial statements.

  d. The officers were "very lax on some of this stuff" and "too lazy to send a lot of that stuff out. . . ." "They just went around and did their stuff. I didn't get involved in any of it."

  e. "They are not giving out a lot of information to me. That's one of the problems I had with the company."

    f. He knew nothing about any of the numerous litigations Genuario and his companies were involved in.

    g. Packard didn't give any thought to whether Mr. Savitzky's firm's bill (referred to above in paragraph 16(b)) was appropriate and he wouldn't be surprised to learn that the $25,000.00 he sent on November 7, 2007 was not paid to that firm or to learn that Genuario threatened to sue Mr. Savitzky for over $200,000.00 if his firm pressed its claim for the amount owing.

    h. He wouldn't be surprised because Genaurio was "a person who is awful. He wouldn't make his payments. You couldn't get him to be rational."

    i. Genuario was "sort of phony."

    j. Harkonen was under the influence of Genuario and "was very good at picking your pocket" when e-Scrub needed money.

    k. "Ralph Genuario was a disaster. He caused more problems than you can possibly believe."

    l. The four individual defendants in the within action constituted the e-Scrub Board of Directors except that one other person had participated in one meeting.

    m. He attended two or three Board meetings in Alexandria; and he was aware of the fact that e-Scrub's letterhead indicated that its office was located in Delaware whereas in fact the address shown on the letterhead for its office was a mailbox number at a UPS store.

18. Upon information and belief, during the relevant time period, e-Scrub had no information reporting system to provide the Board of Directors with the information it needed to perform its function of oversight in the management of e-Scrub's affairs.

a. Packard apparently made his substantial investment in e-Scrub hoping to profit from the future marketing of e-Scrub's intellectual property; and the absence of any reliable information reporting system kept that hope alive and furthered his short term self interest.

b. The existence of such a reporting system would have alerted the Board to e-Scrub's major problems and required e-Scrub either to cut back on accruing obligations or to warn persons extending credit of the potential risks of non-payment instead of assuring them (as Packard assured Andersson on April 20, 2008) that the expanding debts would be paid.

19. e-Scrub does not appear to have filed any bankruptcy proceedings.

a. However, upon information and belief, it failed to pay its Delaware franchise tax for 2009 and thereafter or the sums required to keep its patents and patents pending alive.

b. e-Scrub's relationship with Andersson was terminated on May 9, 2008 and Andersson's role in the Swedish arbitration was given first to the Nilsson law firm and thereafter to the Chouette law firm.

c. e-Scrub has failed to pay the following debts of attorneys providing it with services associated with its relationship with Maersk:

   i. Weiss -- $100,150.00 plus $10,000.00 (see 12(c) above) plus interest;

   ii. Andersson -- $178,000.00 plus interest and costs;

   iii. The Vinge law firm -- $18,000.00 plus interest and costs for providing an expert opinion on Swedish law required in the Maersk suit;

  iv. The Nilsson law firm – about $55,000.00 (based on a judgment of 396,800 Swedish Kroners);

  v. Upon information and belief less than $10,000.00 to the Chouette law firm;

  vi. Savitzky's law firm – around $21,000.00.

20.  Genuario has filed a personal bankruptcy proceeding which has been dismissed twice, once for failure to pay required fees and file schedules, and most recently, for failure to appear at the meeting of creditors. The filing temporarily stayed Weiss' supplemental proceeding against Genuario and appeared to be filed principally to seek a discharge of his obligation to Weiss.

21.  Packard resigned from the e-Scrub Board of Directors in January of 2009. Genuario continues to act on behalf of e-Scrub. He retained possession of e-Scrub's business and bank records and ultimately produced them for inspection in Weiss' supplemental proceeding; and he assigned to Weiss all of e-Scrub's intellectual property.

22.  Whether Richardson or Harkonen have any continuing relationship with e-Scrub is unknown, though efforts made on behalf of Weiss to establish contact with each of them have been unsuccessful. Upon information and belief, Harkonen may have moved to Finland.

23.  No demand has been made on e-Scrub to bring the within action since it appears that Genuario is the only remaining director and he could not and would not exercise an independent or disinterested business judgment in responding to the demand. See paragraphs 12, 17 and 20 above.

## COUNT ONE

24.  The averments of paragraphs 1-23 above are incorporated herein by reference.

25. The defendant directors knew by early November, 2007 that e-Scrub was in severe financial difficulty and unable to pay its debts as they matured unless defendant Packard would advance further funds.

   a. The Board of Directors failed to establish or exercise any control over e-Scrub's financial circumstances; and at least Packard was remarkably uninformed about e-Scrub's assets, liabilities, revenues and expenses; and he did nothing to investigate same and was content to allow the officers "to do their stuff" and to be totally uninvolved in same.

26. The defendant directors were well acquainted with Genuario for many years and knew that he acted without the judgment and integrity required of a Chief Executive Officer; and they should have known that his irrational and irresponsible behavior was destroying the Company and posed a menace to society, injuring innocent third parties who were being misled by Genuario and the presence of Packard on the Board to extend credit to e-Scrub.

27. In view of the foregoing, the Defendants were more than grossly negligent because they utterly failed to create or implement any information reporting system to provide them with the information needed to establish proper oversight and control over e-Scrub's finances and the conduct of Genuario.

   a. As such, the Defendant directors breached their fiduciary duty to properly manage e-Scrub's affairs; and in view of the fact that it is universally understood that Directors need basic information to perform their duties, their failure to create and/or implement any sustained information reporting system constitutes a breach of their duty of good faith and thus of their duty of loyalty which precluded any of them from benefiting from their breach.

b. The Board's failure to properly manage e-Scrub irrevocably damaged the corporation leading to its foreseeable insolvent and bankrupt condition, destroying its intellectual property and reputation and creating wasteful, escalating obligations which it could never hope to meet.

c. While an accurate assessment of the total amount of damage is difficult to estimate prior to discovery, at a minimum it would include an amount sufficient to pay the obligations owed to the attorneys set forth in paragraph 19(c) above, since Packard had paid around $400,000.00 for at most ten percent of the outstanding shares of the company.

*(Remainder of page intentionally left blank)*

Wherefore, Plaintiff prays that a judgment be entered against the Defendant Directors and in favor of e-Scrub for the full amount of its damages which should be more than sufficient to pay all the claims of creditors arising during or after the fall of 2007 that are proven at trial plus interest and costs.

Delaware Counsel

By: _____
Michael Busenkell (DE 3933)
Gellert Scali Busenkell & Brown, LLC
913 N. Market Street, 10th Floor
Wilmington, DE 19801
(302) 425-5812
(302) 425-5814 Fax
mbusenkell@gsbblaw.com

*Counsel for Stanley Weiss*

_____
STANLEY WEISS, pro se
Plaintiff

Date: April 25, 2013

## RULE 23.1 REQUIREMENTS

See Attached Exhibit A - Certification of Stanley Weiss, Esq.