**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

STANLEY WEISS,
derivatively on behalf of e-Scrub
Systems, Inc.

        Plaintiff,

v.

                C.A. No. 13-710-GMS

e-SCRUB SYSTEMS, INC.,
RALPH GENUARIO,
MAIJA HARKONEN,
JOHN PACKARD,
and ELIZABETH RICHARDSON,

        Defendants.

## MEMORANDUM

### I. INTRODUCTION

Plaintiff, Stanley Weiss, who is suing derivatively on behalf of e-Scrub Systems,

Inc. ("e-Scrub"), filed a complaint on April 23, 2013, naming e-Scrub, Ralph Genuario

("Genuario"), Maija Harkonen ("Harkonen"), John Packard ("Packard"), and Elizabeth

Richardson ("Richardson") as defendants. (D.I. 1 at ¶¶ 1-6.) The complaint asserts the

defendants, as directors of e-Scrub, breached fiduciary duties. (*Id.* at ¶¶ 24-27.)

### II. BACKGROUND

#### A. Parties

Plaintiff is an attorney and a New Jersey resident. (*Id.* at ¶¶ 1, 10.) e-Scrub is a

Delaware corporation, which specialized in developing and marketing anti-pollution

technology. (*Id.* at ¶ 2.) Genuario, a resident of Virginia, is the founder of e-Scrub, as

well as its longtime director, CEO, and technology expert. (*Id.* at ¶ 3.) Harkonen was e-

Scrub's director, President, Secretary, and Genuario's assistant. (*Id.* at ¶ 4.) Her last known residence was in Virginia, but she may have relocated to Finland. (*Id.*) Packard, upon information and belief, is a California resident and served as an e-Scrub director from 2002 until January 2009. (*Id.* at ¶ 5.) Richardson is a resident of Maryland, and served as an e-Scrub director. (*Id.* at ¶ 6.)

## B. Factual Background[1]

In November 2007, Genuario retained the Swedish law firm of Andersson, Gustafsson Advokatbyra KB ("Andersson"), on behalf of e-Scrub, to initiate an arbitration proceeding in Stockholm, Sweden against A.P. Moller-Maersk ("Maersk") to resolve certain contract issues and the ownership of processes used in developing e-Scrub's technologies. (*Id.* at ¶ 9.) In December 2007, Maersk filed for an injunction against e-Scrub in United States District Court for the Eastern District of Virginia, to enjoin certain activities of e-Scrub while the arbitration was pending in Stockholm. (*Id.* at ¶ 9(b).) On December 19, 2007, Andersson, with e-Scrub's approval, retained Weiss to respond to Maersk's injunction proceeding. (*Id.* at ¶ 10.) After Weiss performed his services, he submitted a $20,000 bill to e-Scrub, which was approved by Harkonen on February 4, 2008. (*Id.* at ¶ 11.) Genuario, however, objected to Harkonen's approval and sent Weiss "a number of letters asserting various frivolous claims and demanding payments in various escalating amounts." (*Id.* at ¶ 11(a).)

On July 13, 2009, e-Scrub filed suit against Weiss in New Jersey, seeking damages of $1 million and to disbar Weiss pending a competency evaluation. (*Id.* at

[1] D.I. 1.

2

¶ 11(b).) Weiss counterclaimed against e-Scrub and also filed a third party complaint against Genuario. (*Id.* at ¶ 11(c).) On February 5, 2010, the Superior Court of New Jersey entered judgment in favor of Weiss and against e-Scrub and Genuario for $100,150.00, finding their actions "were malicious and done with an evil purpose . . . by seeking to use same to extort monies from Stanley Weiss." (*Id.* at ¶ 12.) After entry of that judgment, Weiss hired Virginia counsel to enforce the judgment in Virginia and proceedings were filed in the Circuit Court for the City of Alexandria. (*Id.* at ¶ 12(b).) On June 27, 2012, that court found Genuario in contempt and *inter alia,* his "behavior throughout [the] process [as] contentious and designed to obfuscate Weiss' counsel's efforts to obtain information related to the assets of e-Scrub," and imposed a fine of $10,000 on e-Scrub to cover Weiss' court costs. (*Id.* at ¶ 12(c).)

Andersson filed suit in Virginia against e-Scrub, Genuario, Packard, and Harkonen. The same lawyer retained by Weiss also represented Andersson. (*Id.* at ¶ 13.) Although Andersson obtained judgment against e-Scrub for $178,000 plus interest and costs, the suit against the individual defendants was dismissed because Packard was granted judgment in his favor, based on the operation of the two year statute of limitations. (*Id.*) Packard allegedly prevailed on the summary judgment motion by representing:

> From several years before 2007 through my resignation from e-Scrub board of directors in 2009, I participated in e-Scrub board meetings by telephone from either my business office in Menlo Park, California or from San Francisco, California or from my home in Palo Alto, California, and I had no contact with the Commonwealth of Virginia in connection with e-Scrub during that time.

(*Id.* at ¶ 14.) During the litigation's discovery proceedings in April 2011, Weiss first

3

learned that Packard's statement was purportedly false. (*Id.* at ¶ 15.) Weiss also learned that e-Scrub's Board had not created or implemented a reliable information reporting system to enable oversight management of the company. (*Id.* at ¶ 15(a).) Documents indicate Packard purchased over $400,000 worth of securities of e-Scrub and one of it subsidiaries on fourteen different occasions. (*Id.* at ¶ 16(a).) Packard also frequently communicated with Genuario and Harkonen regarding the payment of and delivery of the securities. (*Id.*)

On November 6, 2007, before e-Scrub retained Andersson and Weiss, Harkonen informed Packard that e-Scrub had "considerable cash flow problems" and received a bill of $23,832.00 from an American law firm that was working on the Maersk case, as well as a request for $25,000 in securities. (*Id.* at ¶ 16(b).) The following day, Packard wired e-Scrub $25,000. (*Id.* at ¶ 16(c).) Packard also wired $25,000 to e-Scrub on January 8, 2008, $15,000 in February 2008, and $11,600 in July 2008, to cover e-Scrub's share of the arbitrator fees for the Stockholm arbitration. (*Id.*) Packard testified during deposition in the other matters that e-Scrub was bankrupt, however he never investigated the nature of the company's cash flow problems or examined any financial statements. (*Id.* at ¶ 17(a)-(c).) Packard attested e-Scrub's officers were "very lax" or "too lazy" to provide financial or corporate data. According to Packard, the officers "went around and did their stuff. I didn't get involved in any of it." (*Id.* at ¶ 17(d).) His main concern while a director of e-Scrub was the lack of corporate information to the Board. (*Id.* at ¶ 17(e).) According to the complaint, Packard described Genuario as an awful, irrational, phony person, who refused to pay bills. (*Id.* at ¶ 17(h)-(i).)

4

Plaintiff claims the lack of Director oversight enabled Packard to further his short term investment in the company. (*Id.* at ¶ 18.) Packard made substantial investments to profit from the future marketing of e-Scrub's intellectual property. (*Id.* at ¶ 18(a).) Finally, plaintiff avers that a dependable reporting system would have alerted the directors to the company's major financial problems and permitted them to respond appropriately. (*Id.* at ¶ 18(b).)

There is no evidence e-Scrub filed any bankruptcy proceedings. (*Id.* at ¶ 19.) It failed to pay its Delaware franchise tax for 2009. (*Id.* at ¶ 19(a).) e-Scrub has not paid its debts to counsel, including the judgments entered in favor of Weiss and Andersson. (*Id.* at ¶ 19(c).) Genuario has filed for personal bankruptcy, and continues to act on behalf of e-Scrub. (*Id.* at ¶¶ 20-21.) Packard resigned from e-Scrub's Board of Directors in January 2009. (*Id.* at ¶ 21.) Plaintiff is unsure of Harkonen's and Richardson's present relationship with e-Scrub and any attempts to contact them have been unsuccessful. (*Id.* at ¶ 22.)

## C.    Procedural Background

On June 21, 2013, Packard filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), insufficiency of service of process under Rule 12(b)(5), failure to state a claim pursuant to Rule 12(b)(6), and failure to meet the pleading requirements of Rule 23.1. (D.I. 15.) On February 14, 2014, plaintiff filed a motion for default judgment against Genuario, Harkonen, and Richardson. (D.I. 25.) On March 21, 2014, Richardson, acting *pro se*, filed a motion to dismiss pursuant to Rule 12(b)(1), 12(b)(5), 12(b)(6), 23.1, as well as for lack of personal jurisdiction under

Rule 12(b)(2). (D.I. 33.) The court will consider each of these motions.

## III. POSITION OF THE PARTIES

### A. Count 1

#### 1. Plaintiff's Claim

Count 1, the sole count in the complaint, alleges defendants, as directors of e-Scrub, breached their fiduciary duties by failing to mitigate the financial problems of the company. (D.I. 1 at ¶¶ 24-27.) Plaintiff contends defendants knew by November 2007 that unless Packard continued to advance funds, e-Scrub could not pay its accumulated debts. (Id. at ¶ 25.) Defendants failed to exercise any control over e-Scrub's financial situation, and specifically, Packard did nothing to investigate the details of e-Scrub's assets, liabilities, revenues, or expenses. (Id. at ¶ 25(a).) Plaintiff asserts defendants knew or should have known that the combination of Genuario's irrational and irresponsible behavior and Packard's extension of credit was destroying the company and misleading and injuring third parties. (Id. at ¶ 26.) Plaintiff maintains defendants were beyond grossly negligent and violated their duties of good faith and loyalty in failing to implement a reliable information reporting system to oversee and control e-Scrub's finances. (Id. at ¶ 27.) In addition to other requested relief, plaintiff requests, at a minimum, that defendants pay attorney fees incurred by e-Scrub. (Id. at ¶¶ 19(c), 27(c).)

#### 2. Packard's Motion to Dismiss under Rule 12(b)(1)

Packard contends this action should be dismissed for lack of subject-matter jurisdiction because plaintiff lacks standing to bring a derivative claim. (D.I. 16 at 18.)

6

For standing in a derivative claim under *North American Catholic Education Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007), plaintiff must allege e-Scrub was insolvent, which he failed to do. (D.I. 16 at 18-19.) Furthermore, since plaintiff did not become an e-Scrub creditor until December 19, 2007, he is precluded from asserting any derivative claims that arose previously. (*Id.* at 19.)

In response, plaintiff notes the complaint alleges e-Scrub was bankrupt and failed to pay fees and expenses to six different law firms. (D.I. 20 at 7.) Plaintiff maintains discovery is needed to determine whether e-Scrub is insolvent. (*Id.*)

### 3. Packard's Motion to Dismiss under Rule 12(b)(5)

Packard alleges insufficiency of service of process. (D.I. 16 at 19.) Pursuant to 10 DEL. C. § 3114(a), service is ineffective on a corporate director by serving the corporation's former registered agent or the Secretary of State, where the corporation presently lacks a registered agent. (*Id.*) When the complaint was served on April 30, 2013 on the company's former registered agent, The Company Corporation, e-Scrub's charter was void for failure to pay franchise taxes in 2009. (*Id.* at 20.) Since e-Scrub's corporate charter was void, under Delaware law, it could not have a registered agent.

In response, plaintiff notes that under 10 DEL. C. § 3114, when Packard became a director of e-Scrub, he consented to personal service through the entity then serving as the company's registered agent. (D.I. 20 at 7.) Since Packard did not withdraw his consent and sustained no alleged damage by any defect in service, his Rule 12(b)(5) motion should be denied. (*Id.*)

### 4. Packard's Motion to Dismiss under Rule 12(b)(6)

7

Packard argues the complaint fails to state a claim for which relief can be granted. (D.I. 16 at 3.) He contends plaintiff is barred by collateral estoppel and res judicata from asserting a derivative claim for breach of fiduciary duties. (*Id.* at 4.) Packard asserts the same issue, of whether he breached a fiduciary duty as a director of e-Scrub, was already adjudicated in *Andersson Gustafsson Advokatbyra, KB v. e-Scrub Systems Inc.*, ("*Andersson II*") when the court granted judgment in his favor. No. 10-632, 2011 WL 677053 (E.D. Va. Feb. 15, 2011). (D.I. 16 at 4.) Since the same issue was previously adjudicated, collateral estoppel applies. (D.I. 16 at 5-7.) Packard also maintains since the same derivative claim, arising out of the same alleged conduct or occurrence was resolved in *Andersson II*, res judicata operates. (*Id.* at 8-9.)

Packard contends no claim for a violation of a duty of care and loyalty exists. (*Id.* at 9.) Relying on *In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996) and 8 DEL. C. § 102(b)(7), Packard maintains breach of the duty of loyalty based on a director's bad-faith failure in oversight and management, requires pleading particularized facts which exhibit "a conscious disregard of a known duty, or intentionally violates the law or fails to respond to a known duty." (*Id.* at 10-11.) The complaint merely cites out of context paraphrases and excerpts from his deposition that do not support a breach of fiduciary duties. (*Id.* at 11-12.)

Packard argues any claim for breach of fiduciary duties is barred by the three year statute of limitations under 10 DEL. C. § 8106, which accrues from the time of the alleged wrongful act. (*Id.* at 13.) Although the limitations period may be tolled, none of

8

the tolling theories apply.[2] Because tolling is inapplicable and Packard resigned from e-Scrub's Board in January 2009, claims based on his directorial conduct could not be asserted after January 2012. (*Id.* at 15.)

Plaintiff responds his action is not barred by issue preclusion because *Andersson II* was not a derivative action and the claims against Packard involved misrepresentation and the rights of a creditor to sue a director, not breach of fiduciary duties. (D.I. 20 at 2.) Further in *Andersson II*, no ruling on the merits occurred because the court found the statute of limitations operated. (*Id.*) Since plaintiff served only as counsel and was not a party in *Andersson II*, no privity exists for collateral estoppel or res judicata to apply. (*Id.* at 3.)

Plaintiff cites *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006), where the Delaware Supreme Court elaborated on *Caremark*, finding a failure to act in good faith is "a subsidiary element" of the duty of loyalty. *Stone*, 911 A.2d at 369-70. (*Id.* at 4-5.) Because the complaint contends Packard's inaction, as a director, is evidence of a lack of good faith and violation of the duty of loyalty, Rule 12(b)(6) is met. (*Id.* at 5.)

## 5. Packard's Motion to Dismiss under Rule 23.1

Relying on *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1994) (citing *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (the demand futility test applies where a derivative suit is brought based on a violation of a board's oversight duties)), Packard contends dismissal is also warranted for failing to make a demand on the Board and an

---

[2] The three tolling theories recognized under Delaware law are inherently unknowable injuries, equitable tolling, and fraudulent concealment. (D.I. 16 at 13-14).

9

inadequate showing of demand futility. Under *Rales*, to demonstrate a demand would have been futile, particularized facts must be alleged creating reasonable doubt that a board could have, at the time the complaint was filed, validly exercised its independent and disinterested business judgment when responding to a demand.[3] (*Id.* at 16-17.)

Packard argues plaintiff's failure to make a demand on the Board and declaration that demand is excused, is insufficient under Rule 23.1 because plaintiff never alleged the Board lacked independence. (*Id.* at 17.) Plaintiff merely commented since Genuario is e-Scrub's only director, he was unable to exercise independent judgment in responding to a demand. (*Id.*) Packard states the complaint fails to adequately allege that Harkonen and Richardson have no continuing relationship with e-Scrub, which is insufficient in establishing that Genuario is e-Scrub's only remaining director. (*Id.*) Since plaintiff does not make particularized allegations about Harkonen's and Richardson's lack of independence or any wrongdoing, Packard asserts plaintiff's demand should not be excused and the complaint dismissed (*Id.* at 17-18.)

Plaintiff contends the complaint sufficiently alleges Genuario is the only remaining e-Scrub director and that Harkonen was an interested director, under the influence and control of Genuario. (D.I. 20 at 6.) According to plaintiff, since efforts to contact Harkonen and Richardson have been unsuccessful, discovery proceedings are necessary to unravel relevant information about their roles in e-Scrub. (*Id.*)

### 6.    Plaintiff's Motion for Entry of Default Judgment

---

[3] *Rales*, 634 A.2d at 934 (noting demand is excused only in the rare case when director conduct is "so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists").

Plaintiff moves for entry of default judgment against Genuario, Harkonen, and Richardson, claiming Genuario and Harkonen have ignored the proceedings and Richardson failed to respond following her request for an extension of time filed on July 24, 2013. (D.I. 26 at 1; D.I. 23.)

Packard argues plaintiff's motion should be stricken because it is a stealth attempt to improperly add sur-reply arguments in opposition to Packard's motion to dismiss, contains mere conclusory arguments regarding e-Scrub's value and additional allegations of wrongdoing against defendants inconsistent with D. DEL. LR 7.1.2. *Chambers v. Doe*, 453 F. Supp. 2d 858, 861 (D. Del. 2006) (D.I. 28 at 2-3.)

Packard claims plaintiff cannot pursue a default judgment because he lacks standing to sue as a creditor and cannot be a derivative plaintiff. (*Id.* at 3.) Since plaintiff does not have the right to "supplant the Board's prerogatives by seeking a default judgment against anyone," Packard contends plaintiff's motion must be denied. (*Id.* at 4.)

Packard further argues the motion does not comply with FED. R. CIV. P. 55 because plaintiff failed to request the entry of default under Rule 55(a), and therefore,

cannot seek entry of default judgment under Rule 55(b)(1) or (b)(2). (*Id.*)[4]

---

[4] *Smith v. Forester*, C.A. No. 11-893-LPS, 2013 WL 1315959, at *1 (D. Del. Mar. 29, 2013) (noting entry of default judgment is a two-step process, where under Rule 55(a), "a party seeking to obtain a default judgment must first request that the Clerk of the Court 'enter . . . the default' of the party that has not answered the pleading," and after "default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court").

### 7. Richardson's Motion to Dismiss Plaintiff's Complaint

Richardson filed a motion to dismiss plaintiff's complaint on March 21, 2014. (D.I. 33.) Her motion to dismiss incorporates Packard's arguments concerning Rules 12(b)(1), 12(b)(6), and 23.1. (D.I. 34 at 7-9, 12.)

She also relies on Rule 12(b)(5) because plaintiff failed to serve her, Genuario, Harkonen, and e-Scrub affidavits of service, although he filed additional pleadings including the motion for entry of default judgment. (Id. at 10-11.) Richardson seeks dismissal of the entire action, or in the alternative, her dismissal as a defendant. (Id. at 11.) Richardson also maintains the complaint must be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) since plaintiff failed to obtain service of process on her. (Id. at 11-12.)

In response to Richardson's Rule 12(b)(5) motion, plaintiff claims no additional pleadings or motions were filed, except the motion for default judgment, which requires service consistent with FED. R. CIV. P. 5(a)(2). (D.I. 35 at 1.) He further contends Richardson's Rule 12(b)(2) argument, regarding lack of personal jurisdiction, fails to consider the operation of 10 DEL. C. § 3114. (Id.)[5]

### IV. STANDARD OF REVIEW

#### 1. Rule 12(b)(1) Standard

"'When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for

---

[5] Plaintiff erroneously cited 10 DEL. C. § 3114, which pertains to service of process, rather than personal jurisdiction, which is governed by 10 DEL. C. § 3104(c).

12

lack of subject matter jurisdiction, all other defenses and objections become moot.'"
*Resnik v. Woertz*, 774 F. Supp. 2d 614, 627 (D. Del. 2011) (citing *UD Tech, Corp. v.*
*Phenomenex, Inc.*, C.A. No. 05-842, 2007 WL 28295, at *3 (D. Del. Jan. 4, 2007)). A

motion under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits

of the complaint, and such motion may present either a facial or factual challenge to

subject matter jurisdiction. *Lieberman v. Delaware*, C.A. No. 96-523-GMS, 2001 WL

1000936, at *1 (D. Del. Aug. 30, 2001) (citing *Mortensen v. First Savings and Loan*, 549

F.2d 884, 891 (3d Cir. 1977)). When the movant exhibits a facial challenge, the court

must accept all factual allegations in the complaint as true and may only consider the

complaint and documents referenced therein or attached. *Samsung Elecs. Co., Ltd. v.*
*ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008) (citing *Gould Elecs.,*
*Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Therefore, dismissal for a

facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be

immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly

frivolous.'" *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991)

(quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Facially insubstantial and frivolous

claims have "been equated with such concepts as 'essentially fictitious,' 'wholly

insubstantial,' 'obviously frivolous,' . . . [and] 'obviously without merit.'" *Harik v.*
*Venizelos*, C.A. No. 12-845-SLR, 2013 WL 2285049, at *3 (D. Del. May 23, 2013)

(quoting *Hagans v. Lavine*, 415 U.S. 528, 537 (1974)). Facially insufficient claims,

therefore, must be dismissed when there is "'no room for the inference that the

questions sought to be raised can be the subject of controversy.'" (*Id.*) (quoting *Hannis*

13

*Distilling Co. v. Baltimore*, 216 U.S. 70, 80 (1909)).

When a factual challenge is presented, the court is not limited to the allegations of the complaint or to accept those allegations as true. *Resnik*, 774 F. Supp. 2d at 627. The court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and the existence of disputed material facts will not prevent the court from analyzing the merits of jurisdictional claims. *Lemon Bay Partners, LLP v. Hammonds*, C.A. No. 05-327-GMS, 2007 WL 1830899, at *3 (D. Del. June 26, 2007). Although the plaintiff bears the burden to prove the existence of jurisdiction, the burden is light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of the Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Kulick v. Pocono Downs Racking Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).

## 2. Rule 12(b)(2) Standard

FED. R. CIV. P. 12(b)(2) requires the court to dismiss a case when it lacks personal jurisdiction over the defendant. A determination of personal jurisdiction involves a two-part analysis, where the court must first apply the long-arm statute of the state in which it is located. *Zazzali v. Alexander Partners, LLC*, C.A. No. 12-828-GMS, 2013 WL 5357044, at *2 (D. Del. Sept. 25, 2013) (citing *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001)). Second, the court must then determine whether the exercise of jurisdiction over the defendant would comport with due process,

14

which requires the establishment of sufficient "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Id.) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

For a Rule 12(b)(2) motion, the court must accept all allegations in the complaint as true. (Id.) (citing Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F. Supp. 53, 55 (D. Del. 1982)). However, the plaintiff bears the burden of alleging facts sufficient to make a prima facie showing of personal jurisdiction over the defendant, which requires "establish[ing] with reasonable particularity" that jurisdiction exists. (Id.) (citing ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F. Supp. 2d 268, 270-71 (D. Del. 2001)).

### 3. Rule 12(b)(5) Standard

Rule 12(b)(5) may operate to dismiss a complaint when a plaintiff fails to properly serve a defendant. FED. R. CIV. P. 4(m) provides: "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action." It further provides that: "[u]pon a showing of good cause for the failure to serve, the court must extend the time for service; [and] the court can, at its discretion, extend the time for service even if the plaintiff has not shown good cause for the delay." Daoud v. City of Wilmington, 894 F. Supp. 2d 544, 550 (D. Del. 2012) (citing FED. R. CIV. P. 4(m)); see also MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1098 (3d Cir. 1995).

## 4.  Rule 12(b)(6) Standard

FED. R. CIV. P. 12(b)(6) governs a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the sufficiency of the complaint, and does not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Twombly*, 550 U.S. 544, 563 n.8 (2007) (stating "[w]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *Burlington*, 114 F.3d at 1420).

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions." *Twombly*, 550 U.S. at 555. Heightened fact pleading is not required:  rather "enough facts to state a claim to relief that is plausible

16

on its face" must be alleged. *Id.* at 570.

### 5. Rule 23.1 Standard

Pursuant to FED. R. CIV. P. 23.1(b)(3), a shareholder bringing a derivative suit must file a complaint that states with particularity: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Although Rule 23.1 "provides the heightened pleading standard for derivative actions in federal court, the substantive rules for determining whether a plaintiff has satisfied that standard 'are a matter of state law.'" *Fares v. Lankau*, 953 F. Supp. 2d 524, 528 (D. Del. 2013) (citing *King ex rel. Cephalon Inc. v. Baldino*, 409 Fed. Appx. 535 (3d Cir. 2010)). Therefore, "federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate [that] demand would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).

> In this regard, the Delaware Supreme Court has explained that the entire question of demand futility is inextricably bound to issues of business judgment and the standard of that doctrine's applicability. . . . It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.

*Fares*, 953 F. Supp. 2d at 528 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overrruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000)). "The key principle upon which this area of . . . jurisprudence is based is that the

17

directors are entitled to a presumption that they were faithful to their fiduciary duties."
*Halpert v. Zhang*, 966 F. Supp. 2d 406, 411 (D. Del. 2013) (quoting *Beam ex. rel.
Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)).
The burden, therefore, is on the party challenging a board's decision to establish facts
rebutting the presumption that the business judgment rule applies. *Id.* (citing *Levine v.
Smith*, 591 A.2d 194, 205-06 (Del. 1991)).

"By promoting the exhaustion of intracorporate remedies as an alternate dispute
resolution over immediate recourse to litigation, 'the demand requirement is a
recognition of the fundamental precept that directors manage the business and affairs
of corporations.'" *Id.* (quoting *Aronson*, 473 A.2d at 811-12). Within this framework, the
Delaware Supreme Court has described the practice of determining demand futility in
deciding that allegations of particularized facts give rise to a reasonable doubt
when "the directors are disinterested and independent," or "the challenged transaction
was otherwise the product of a valid exercise of business judgment." *Fares*, 953 F.
Supp. 2d at 529 (quoting *Aronson*, 473 A.2d at 814). If either prong of the test is
satisfied, then demand is excused. *Brehm*, 746 A.2d at 256.

## V.    DISCUSSION

### Packard and Richardson's Motions to Dismiss under Rule 12(b)(1)

The court first determines whether it has subject-matter jurisdiction over
plaintiff's claim. Packard and Richardson's motions to dismiss for plaintiff's lack of

standing to bring a derivative claim are facial attacks, rather than factual, because they challenge the sufficiency of the complaint and argue that plaintiff failed to allege e-Scrub was insolvent. The court, therefore, must accept all of plaintiff's factual allegations as true and may only consider the complaint and the documents referenced within it.

The Delaware Supreme Court in *Gheewalla* ruled when a corporation is insolvent, "its creditors take the place of the shareholders as the residual beneficiaries of any increase in value." 930 A.2d at 101. Therefore, the creditors of an insolvent corporation have standing to bring derivative claims against directors on behalf of the corporation for breaches of fiduciary duties. (*Id.*) (citing *Agostino v. Hicks*, 845 A.2d 1110, 1117 (Del. Ch. 2004)). For a creditor to have standing to initiate a shareholder suit, it follows that they must have been a creditor at the time "the specific acts of alleged wrongdoing [occurred]" and "not when their effect [was] felt." *Schreiber v. Bryan*, 396 A.2d 512, 516 (Del. Ch. 1978); *see also Alabama By-Products Corp. v. Cede & Co. on behalf of Shearson Lehman Bros., Inc.*, 657 A.2d 254, 264 (Del. 1995).

In order to meet the burden to plead insolvency, a plaintiff must plead facts that show either the defendant corporation had "a deficiency of assets below liabilities with no reasonable prospect that the business will succeed, or that it was unable to meet the maturing obligations as they fell due in the ordinary course of business." *Buckley v. O'Hanlon*, No. 04-955-GMS, 2007 WL 956947, at *7 (D. Del. Mar. 28, 2007) (citing *Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004)). A plaintiff need not prove the corporation's insolvency by clear and convincing

evidence, but only allege facts, that if true, would demonstrate the corporation's
insolvency. *Production Resources*, 863 A.2d at 782.

In this matter, plaintiff has not adequately plead facts which would demonstrate
e-Scrub's insolvency. In the complaint, plaintiff only mentions Packard testified in his
deposition that e-Scrub is bankrupt and failed to pay its attorneys' fees following the
Maersk litigation. (D.I. 1 at ¶¶ 17(a), 19(c).) Parts of the deposition of Packard,
presented by plaintiff, however, do not lead to any reasonable inference about e-
Scrub's insolvency, nor contains any information regarding e-Scrub's financial situation.
(D.I. 35, Ex. A.) The only relevant portion of Packard's deposition, relating to e-Scrub's
financial status, was cited by Packard:

> Q. Do you understand that the company has gone
> bankrupt, formal proceedings?
>
> A. I don't know if the formal proceedings, but I saw
> something that showed - where did I see that? I saw
> something that showed that their stock was worthless,
> and I think Kadelburger made sure that happened.

(D.I. 21, Appx.) This statement is insufficient to show e-Scrub was bankrupt or had
such insufficient assets that the business could not reasonably continue and succeed.
Mere evidence of e-Scrub's obligation to pay the attorneys' fees, without more, does not
adequately establish its insolvency or show "an inability to meet maturing
obligations . . . ." While plaintiff concedes "discovery may lead to additional information
about e-Scrub's financial position," Delaware law clearly requires insolvency must be
supported by well-pleaded facts, a burden not met by the complaint.

If plaintiff had sufficiently plead insolvency, he still lacks standing to bring the
derivative claim. Plaintiff became an e-Scrub creditor around December 19, 2007,

when he was retained by Andersson and approved by e-Scrub, to work on the Maersk litigation. (D.I. 1 at ¶ 10.) Plaintiff asserts the alleged breach of fiduciary duties occurred in the November 6, 2007 time frame, when Packard became aware of e-Scrub's financial problems and failed to mitigate them. (D.I. 1 at ¶ 17(b)-(c).) Since plaintiff became a creditor following the alleged wrongdoing, he does not have standing to bring a derivative suit against e-Scrub. Packard and Richardson's motions to dismiss Count One pursuant to Rule 12(b)(1) are granted.

Since the court lacks subject-matter jurisdiction, an analysis of the defendants' other arguments for dismissal and plaintiff's motion for default judgment is unnecessary, as those issues are moot.

## VI. CONCLUSION

For the aforementioned reasons, the court grants defendants Packard and Richardson's motions to dismiss.

Dated: Sept 19, 2014

UNITED STATES DISTRICT JUDGE

21